1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAUREL EMPLOYMENT LAW**
Joshua I. White (State Bar No. 278166)
josh@laurelemploymentlaw.com
Ashley Silva-Guzman, Esq. (State Bar No. 340584)
ashley@laurelemploymentlaw.com
808 Wilshire Boulevard, Suite 200
Santa Monica, CA 90401
Telephone: (323) 551-9221
Facsimile: (310) 564-4093

Attorneys for Plaintiff,
Yanne Xavier

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/09/2025 11:59 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Elder, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| YANNE XAVIER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>FOX BROADCASTING COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.: 25SMCV04653<br><br>**COMPLAINT FOR:**<br><br>1. Whistleblower Retaliation in Violation of Labor Code § 1102.5;<br>2. National Origin Discrimination in Violation of FEHA (Gov't Code § 12940(a));<br>3. Harassment and Hostile Work Environment Based on National Origin in Violation of FEHA (Gov't Code § 12940(j));<br>4. Retaliation in Violation of FEHA (Gov't Code § 12940(h));<br>5. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of Gov't Code § 12940(k);<br>6. Constructive Discharge in Violation of Public Policy;<br>7. Unfair Business Practices in Violation of Bus. & Prof. Code § 17200, *et seq.*<br><br>**Demand for Jury Trial**<br>[UNLIMITED JURISDICTION] |

**COMES NOW** Plaintiff YANNE XAVIER ("Plaintiff"), who hereby brings this Complaint against FOX BROADCASTING COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1 through 10 ("Defendants"), inclusive, and alleges as follows:

## THE PARTIES

1.      Plaintiff YANNE XAVIER is, and at all relevant times herein has been, an individual residing in Los Angeles County, California.

2.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendant FOX BROADCASTING COMPANY, LLC ("Defendant Fox") is a Delaware Limited Liability Company doing business in Los Angeles County, California, with its principal place of business located at 10201 W. Pico Blvd, Los Angeles, CA 90064.

3.      Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, were the agents, employees, managing agents, supervisors, co-conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

4.      The true names and capacities, whether a corporation, agent, individual or otherwise, of DOES 1 through 10, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Each Defendant designated herein as a DOE is negligently or otherwise legally responsible in some manner for the events and happenings referred to herein and thereby proximately caused injuries and damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint to show their true names and capacities when the same have been ascertained.

5.      Plaintiff is informed and believes that at all relevant times herein mentioned Defendants, and/or DOES 1 through 10 are and were corporations, business entities, individuals, and partnerships, licensed to do business and actually doing business in the State of California. As such and based upon all the facts and circumstances incident to Defendant's business in California, Defendants are subject to the Fair Employment and Housing Act ("FEHA"), the Labor Code, and the Government Code.

6.      At all times mentioned here, DOES 1 through 10 were the agents, representatives,

employees, successors and/or assigns of Defendants and at all times pertinent hereto were acting within the course and scope of their authority as such agents, representatives, employees, successors, and/or assigns.

7.     Each Defendant designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and caused damages proximately to Plaintiff as alleged herein. At all times mentioned herein, DOES 1 through 10 were the agents, representatives, employees, successors and/or assigns of Defendants and at all times pertinent hereto were acting within the course and scope of their authority as such agents, representatives, employees, successors, and/or assigns.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction to hear this case because Plaintiff is informed and believes that the monetary damages sought in this Complaint for Defendants' conduct exceeds the minimal jurisdictional limits of the Superior Court of the State of California.

9.     Pursuant to the Code of Civil Procedure ("CCP") section 395(a), venue is proper in the above-entitled Court because the majority of all facts giving rise to the causes of action stated herein arose in Los Angeles County, California. Venue in Los Angeles County, California, is further proper under Government Code section 12965(b) because the unlawful practices were committed in Los Angeles County, California. Plaintiff worked in Los Angeles County, California, and Plaintiff is informed and believes that records relevant to this action are maintained in Los Angeles County, California.

10.     This Court has personal jurisdiction over Plaintiff, who brings her claims in this Court, and otherwise is a citizen of the State of California, County of Los Angeles.

11.     Plaintiff is informed and believes that Defendants, and each of them, committed other wrongful acts or omissions of which Plaintiff is presently unaware. Plaintiff shall conduct discovery to identify said wrongful acts and will seek leave of Court to amend this Complaint to add said acts upon discovery.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.     Plaintiff is Brazilian woman who was employed by Defendant Fox as a Manager for experiences & events within the Creative Services Department from August 14, 2023, until her constructive discharge June 26, 2025. Initially hired as a temporary employee on August 14,

2023, 3

Plaintiff was converted to a full-time position on October 23, 2023. Throughout her employment, Plaintiff maintained all necessary qualifications for her position and consistently performed her job duties in an exemplary manner.

13.    During her employment, Plaintiff received positive performance evaluations and praise from management. Plaintiff successfully executed major events including FOX Sports NFL Viewing Party, Bring Your Kids to Work Day, Women of FOX Sports Panel, and shareholders events. On March 20, 2025, Bob Stillo, Senior Vice President, praised Plaintiff's initiative via email stating "Thanks Yanne. Good job taking a successful initiative and poising it for growth".

14.    Despite her strong job performance, Plaintiff faced ongoing discrimination and harassment based on her national origin and accent by her direct supervisor Sylvia Abumuhor. Abumuhor made disparaging remarks about Plaintiff's English skills and mocked her Brazilian background and accent, creating a hostile work environment. When Plaintiff raised concerns directly with Abumuhor about the inappropriate and demeaning comments, the discriminatory conduct persisted without any corrective action.

15.    Beginning in late 2024, Plaintiff identified several budget irregularities within her department. These included inflating Production Assistant rates above the actual $300 daily rate and diverting the excess to overhead accounts used for bonuses and freelance hires, misusing overhead funds for unauthorized purposes, and processing unapproved payments in the shareholder event budget. Plaintiff also discovered unexplained payroll payments made from September to December 2024 for two individuals without proper authorization.

16.    In early December 2024, a pattern of retaliation began when Shea Ellison, a close colleague of Plaintiff, was terminated just days after raising concerns about supervisor Abumuhor to executive Bob Stillo. That same day, while Plaintiff was on approved medical leave for a surgery, Defendants removed her from all assigned events, pulled her from the Super Bowl project in New Orleans despite her significant role in pre-production, logistics, and planning, and informed her she would no longer attend any onsite events, including a secondary event she had been co-leading with a colleague.

17.    Later in December 2024, Plaintiff again raised concerns about financial irregularities through a Slack message to her supervisor, Abumuhor, specifically questioning unexplained payroll

payments discovered while closing the shareholder event budget. Abumuhor responded dismissively and told Plaintiff it was not her responsibility, effectively shutting down Plaintiff's legitimate inquiry into potential financial misconduct. This response reflected a broader pattern of deflecting responsibility when budget irregularities were brought to management's attention.

18.    In January 2025, Plaintiff scheduled a private meeting with Vice President of HR ("Human Resources"), Melinda Joe, to report budget mismanagement, a retaliatory workplace culture, discriminatory remarks, and a hostile work environment. Following the meeting, on January 29, 2025, Melinda Joe emailed Plaintiff requesting additional details about the incidents discussed. However, due to her fear of retaliation, Plaintiff felt too intimidated to respond in writing. Instead, she went directly to Joe's office to express her concerns about potential retaliation if she submitted a written account.

19.    Following Plaintiff's protected disclosures, Defendants engaged in escalating retaliation. Plaintiff was placed under heightened scrutiny, directed to copy her supervisor on all email communications, and systematically excluded from important meetings and decision-making processes. Her contributions were routinely undermined to upper management, and she was subjected to increasing isolation, intimidation, and verbal hostility during meetings, including instances of yelling. Supervisor Abumuhor's conduct grew increasingly unprofessional, often interrupting one-on-one meetings to take phone calls or respond to emails, pausing discussions frequently, and fostering a workplace environment marked by fear and mistrust.

20.    The hostile work environment was further intensified by inappropriate remarks directed at Plaintiff's status as a mother. After mentioning she was tired from caring for her sick child, Supervisor Abumuhor made disparaging comments about parenthood, expressing disdain for those with children and implying that having children was a personal failing. This hostility toward Plaintiff's family responsibilities contributed to an increasingly toxic workplace.

21.    Due to the mistreatment she endured, Plaintiff was forced to take medical leave from May 18 to May 30, 2025, and began therapy on May 23 to address the psychological impact of her work environment. While on leave, on May 19, she experienced a severe anxiety attack that required hospitalization and immediate medical treatment. She was prescribed medication to manage stress and sleep and began suffering from ongoing symptoms, including heightened anxiety, extreme sleep

disruption, fatigue, panic attacks, and signs consistent with PTSD.

22.    On May 5, 2025, in clear retaliation for Plaintiff's protected activities, Defendants issued a written performance warning through Supervisor Abumuhor, with copies sent to Bob Stillo, Diana Ruiz, and Plaintiff's HR file. During the follow-up meeting on May 14, 2025, Stillo refused to allow Plaintiff to respond, asserted that the warning was factual and had been approved by HR, and failed to advise her of her right to submit a rebuttal or contact HR independently. The warning included false allegations about Plaintiff's performance and was plainly pretextual, as it followed closely after her protected complaints and contradicted her consistently strong performance history.

23.    On May 19, 2025, Plaintiff submitted a detailed rebuttal, directly challenging the inaccuracies in the warning and demonstrating that the alleged issues were baseless. The warning not only served as a form of retaliation but also caused financial harm by disqualifying her from receiving a performance bonus typically awarded after July 1, as outlined in the employee handbook.

24.    Defendants' conduct created intolerable working conditions that amounted to a constructive discharge. Although Plaintiff remained technically employed, the ongoing retaliation, micromanagement, removal of job duties, and systematic isolation forced her to work from home and subsequently go on medical leave due to severe stress and work-related mental health issues. She actively sought other employment and was unable to return to the hostile office environment. The conditions were so severe that no reasonable employee could be expected to continue working under them.

25.    Defendants' conduct was willful, malicious, and oppressive, demonstrating a conscious disregard for Plaintiff's rights and the requirements of California law regarding workplace discrimination, harassment, retaliation, and whistleblower protection. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to loss of past and future earnings, loss of employment benefits, severe emotional distress, anxiety, mental anguish, medical expenses, and other special and general damages according to proof at trial.

26.    Plaintiff's experience was part of a broader pattern of retaliation and hostile treatment within the department. In late 2024, coordinator Shea Ellison was terminated shortly after raising complaints about the toxic environment created by Defendant Abumuhor. On December 6, 2024, Shea Ellison reported to HR that her firing was retaliatory, putting Defendants on clear notice. Other

employees faced similar issues, including Annie Geffroy, who resigned in November 2024 due to emotional distress and held evidence of budget fraud, and Lillian Fisher, who repeatedly complained to HR without any action taken

27.     Defendants are vicariously liable for the acts of their agents, employees, and representatives who engaged in the unlawful conduct described herein. These agents, employees, and representatives, including Abumuhor, Bob Stillo, Diana Ruiz, and other supervisory personnel, were acting within the course and scope of their employment or agency relationship with Defendants when they committed the alleged acts of discrimination, harassment, and retaliation.

28.     Plaintiff filed timely charges with the Civil Rights Department and received notices of the right to sue in a California Superior Court pursuant to Government Code section 12965(b), permitting her to bring this legal action. Plaintiff has therefore exhausted her administrative remedies under the Government Code. Attached hereto and incorporated herein as **Exhibit 1** is Plaintiff's Right to Sue Letter.

### FIRST CAUSE OF ACTION

**Whistleblower Retaliation**

**(Labor Code § 1102.5)**

**(Against All Defendants and DOES 1-10)**

29.     Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

30.     At all times herein mentioned, Labor Code section 1102.5 was in full force and effect and was binding on Defendants. This statute prohibits employers from retaliating against employees who disclose information to a government or law enforcement agency, or to a person with authority over the employee, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

31.     Plaintiff engaged in protected whistleblower activity by reporting questionable financial practices and budget irregularities within her department to her supervisor and management, including inflating Production Assistant rates above actual costs and diverting excess funds to overhead accounts,

misusing overhead funds for unauthorized purposes, processing unapproved payments in shareholder event budgets, and discovering unexplained payroll payments from September to December 2024 for two individuals without proper authorization.

32.    Plaintiff had reasonable cause to believe that these financial practices constituted violations of law, including potential violations of corporate financial reporting requirements, misappropriation of funds, and fraudulent accounting practices. Plaintiff's reports were made in good faith based on her observations of systematic budget manipulation and unauthorized financial transactions.

33.    Following Plaintiff's protected whistleblower disclosures in December 2024, Defendants engaged in a systematic pattern of retaliation against Plaintiff, including removing Plaintiff from all assigned events while she was on approved medical leave, pulling Plaintiff from the Super Bowl project in New Orleans despite her significant role in pre-production and planning, informing Plaintiff she would no longer attend onsite events, stripping Plaintiff of her job responsibilities and relegating her from leading events to merely supporting her supervisor, subjecting Plaintiff to increased micromanagement and surveillance, and issuing a pretextual written warning on May 5, 2025, designed to prevent Plaintiff from receiving bonus compensation.

34.    The retaliatory nature of Defendants' conduct is evidenced by the temporal proximity between Plaintiff's protected disclosures and the adverse employment actions, the systematic reduction of Plaintiff's responsibilities and authority following her reports, and the lack of legitimate business justification for the adverse treatment given Plaintiff's consistently strong performance history.

35.    As a direct and proximate result of Defendants' whistleblower retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to substantial losses in earnings and employment benefits, loss of bonus compensation, constructive discharge, humiliation, emotional distress, anxiety, mental anguish, medical expenses, and mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

36.    Defendants' retaliatory actions were willful, malicious, and oppressive, demonstrating a conscious disregard for Plaintiff's rights under Labor Code section 1102.5 and the public policies protecting whistleblowers. Plaintiff is thus entitled to recover punitive damages from Defendants in an

1   amount according to proof at trial.

2   <u>**SECOND CAUSE OF ACTION**</u>

3   **National Origin Discrimination**

4   **(Gov't Code § 12940(a))**

5   **(Against All Defendants and DOES 1-10)**

6   37.    Plaintiff hereby incorporates by reference the allegations in the paragraphs above as

7   though fully set forth herein.

8   38.    At all times herein mentioned, FEHA was in full force and effect and was binding on

9   Defendants. This law prohibits employers from discriminating against employees based on protected

10  characteristics including national origin.

11  39.    Plaintiff is a Brazilian woman whose national origin is Brazil. Throughout her

12  employment, Plaintiff was qualified for her position and performed her job duties in an exemplary

13  manner, as evidenced by positive performance reviews and successful execution of major events.

14  40.    Despite her strong performance, Defendants subjected Plaintiff to adverse employment

15  actions based on her Brazilian national origin and accent, including but not limited to Supervisor

16  Abumuhor making discriminatory comments that Plaintiff "only learned how to speak English" after

17  starting at Fox, mocking Plaintiff's accent in front of other employees including Shea Ellison, making

18  Plaintiff feel diminished and questioning her intelligence based on her accent and Brazilian heritage,

19  subjecting Plaintiff to different treatment and heightened scrutiny following her complaints about

20  discriminatory conduct, and creating an atmosphere where Plaintiff felt unsafe and unwelcome due to

21  her national origin.

22  41.    Defendants' discriminatory conduct was motivated by Plaintiff's Brazilian national origin

23  and accent, as evidenced by the specific nature of the comments targeting her English language skills and

24  the timing of adverse treatment following her complaints about national origin discrimination.

25  42.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has

26  suffered and continues to suffer damages, including but not limited to substantial losses in earnings and

27  employment benefits, humiliation, emotional distress, anxiety, mental anguish, medical expenses, and

28  mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

43.     Defendants' discriminatory actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof at trial.

### THIRD CAUSE OF ACTION

**Harassment and Hostile Work Environment Based on National Origin**

**(Gov't Code § 12940(j))**

**(Against All Defendants and DOES 1-10)**

44.     Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

45.     At all times herein mentioned, FEHA was in full force and effect and was binding on Defendants. This law prohibits employers from harassing employees based on protected characteristics including national origin.

46.     Plaintiff is a Brazilian woman whose national origin is Brazil. Throughout her employment, Defendants subjected Plaintiff to severe and pervasive harassment based on her Brazilian national origin and accent that altered the terms and conditions of her employment and created an abusive working environment.

47.     The harassment included but was not limited to Supervisor Abumuhor making derogatory comments that Plaintiff "only learned how to speak English" after starting at Fox in front of other employees, making discriminatory comments about Plaintiff's accent that made her feel diminished and questioning her intelligence, creating an atmosphere where Plaintiff felt unwelcome due to her Brazilian heritage, and subjecting Plaintiff to hostile treatment during meetings when she attempted to address the discriminatory conduct.

48.     The harassment was severe and pervasive, occurring regularly throughout Plaintiff's employment and escalating after she complained about the discriminatory treatment. The conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively hostile work environment.

49.     As a direct and proximate result of Defendants' harassment and creation of a hostile work

environment, Plaintiff has suffered and continues to suffer damages, including but not limited to substantial losses in earnings and employment benefits, severe emotional distress requiring hospitalization and medical treatment, anxiety attacks, sleep disruption, PTSD symptoms, humiliation, mental anguish, medical expenses, and mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

50.     Defendants' harassment was willful, malicious, fraudulent, and oppressive, and was committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### (Gov't Code § 12940(h))

### (Against All Defendants and DOES 1-10)

51.     Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

52.     At all times herein mentioned, FEHA was in full force and effect and was binding on Defendants. This law prohibits employers from retaliating against employees for engaging in protected activities.

53.     Plaintiff engaged in protected activities under FEHA by reporting workplace harassment and discrimination based on her national origin and accent to her supervisor and scheduling a private meeting with VP of HR Melinda Joe in January 2025 to report budget mismanagement, retaliatory culture, and hostile work environment.

54.     As a result of Plaintiff's protected activities, Defendants subjected her to adverse employment actions, including but not limited to removing Plaintiff from her events and the Super Bowl project while she was on approved medical leave in December 2024, stripping Plaintiff of her job responsibilities and relegating her from leading events to merely supporting her supervisor, subjecting Plaintiff to increased micromanagement and requiring her to copy her supervisor on all email communications, systematically isolating Plaintiff from key meetings and decisions, and issuing a

pretextual written warning on May 5, 2025, that prevented Plaintiff from receiving her bonus.

55.     Plaintiff's engagement in protected activities was a substantial motivating reason for Defendants' adverse employment actions against her. The retaliatory nature of Defendants' conduct is evidenced by the timing of adverse actions following Plaintiff's complaints and the lack of legitimate business justification for the treatment.

56.     As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered and continues to suffer damages, including but not limited to substantial losses in earnings and employment benefits, loss of bonus compensation, humiliation, emotional distress, anxiety, mental anguish, medical expenses, and mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

57.     Defendants' retaliatory actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof at trial.

### FIFTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and Retaliation**

**(Gov't Code § 12940(k))**

**(Against All Defendants and DOES 1-10)**

58.     Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

59.     At all times herein mentioned, FEHA was in full force and effect and was binding on Defendants. This law requires employers to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring.

60.     Defendants failed to take all reasonable steps to prevent discrimination, harassment, and retaliation against Plaintiff. This failure included failing to properly investigate Plaintiff's complaints about discriminatory comments regarding her national origin and accent, failing to take corrective action when Plaintiff reported discrimination and harassment to management and HR, failing to maintain and enforce adequate anti-discrimination policies and procedures, failing to properly train supervisors

including Defendant Abumuhor regarding discrimination, harassment, and retaliation, and failing to take appropriate disciplinary action against those who discriminated against and harassed Plaintiff.

61.    Despite having actual knowledge of discriminatory and retaliatory conduct, including through Plaintiff's meeting with VP of HR Melinda Joe and documented complaints, Defendants failed to conduct proper investigations and allowed the hostile work environment to persist and escalate.

62.    As a direct and proximate result of Defendants' failure to prevent discrimination, harassment, and retaliation, Plaintiff was subjected to continued discrimination, harassment, and retaliation, ultimately resulting in her constructive discharge.

63.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to substantial losses in earnings and employment benefits, humiliation, emotional distress, anxiety, mental anguish, medical expenses, and mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

64.    Defendants' failure to prevent discrimination, harassment, and retaliation was willful, malicious, and oppressive, entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

### Constructive Discharge in Violation of Public Policy

### (Against All Defendants and DOES 1-10)

65.    Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

66.    At all times mentioned herein, there existed fundamental and substantial public policies of the State of California, as expressed in FEHA and the Labor Code, protecting employees from discrimination, harassment, retaliation, and protecting whistleblowers who report violations of law.

67.    Defendants' conduct violated fundamental public policies by discriminating against Plaintiff based on her national origin and accent, subjecting Plaintiff to harassment and a hostile work environment, retaliating against Plaintiff for engaging in protected activities including reporting budget irregularities and financial mismanagement, and failing to prevent discrimination, harassment, and retaliation.

68.    The working conditions created by Defendants' conduct were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to seek alternative employment. These conditions included the systematic stripping of job responsibilities, excessive micromanagement, isolation from key meetings and decisions, retaliation for protected whistleblowing activities, and the creation of a hostile work environment targeting Plaintiff's national origin.

69.    As a result of Defendants' conduct, Plaintiff was forced to work from home due to severe stress and work-related mental health issues, actively seek alternative employment, and was unable to return to the office environment due to the intolerable working conditions created by Defendants.

70.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to substantial losses in earnings and employment benefits, loss of career advancement opportunities, humiliation, emotional distress, anxiety, mental anguish, medical expenses, and mental and physical pain and suffering, all to her damage in a sum according to proof at trial.

71.    Defendants' conduct was willful, malicious, and oppressive, demonstrating a conscious disregard for Plaintiff's rights and the fundamental public policies of the State of California, entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

### Unfair Business Practices

### (Bus. & Prof. Code § 17200, *et seq.*)

### (Against All Defendants and DOES 1-10)

72.    Plaintiff hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

73.    Business and Professions Code sections 17200, et seq. prohibit unfair competition, including any unlawful, unfair, or fraudulent business practices.

74.    Defendants engaged in unlawful, unfair, and fraudulent business practices by discriminating against Plaintiff based on her national origin and accent, subjecting Plaintiff to harassment and a hostile work environment, retaliating against Plaintiff for engaging in protected activities including

1  whistleblowing, failing to prevent discrimination, harassment, and retaliation, failing to provide

2  employment records as required by law, failing to maintain accurate payroll records as required by law,

3  and failing to provide accurate itemized wage statements as required by law.

4      75.    These actions constitute unfair business practices in violation of Business and Professions

5  Code sections 17200, et seq., and provide Defendants with an unfair competitive advantage over

6  employers who comply with employment laws.

7      76.    As a result of Defendants' unfair business practices, Plaintiff has suffered injury in fact

8  and lost money or property, including lost wages, benefits, and other employment-related compensation.

9      77.    Pursuant to Business and Professions Code section 17203, Plaintiff seeks restitution of all

10 benefits Defendants have received from their unfair and unlawful business practices, plus interest,

11 reasonable attorneys' fees, and costs of suit.

12                          **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiff prays for judgment as follows:

14      1.    For general damages and compensatory damages in an amount according to proof,

15 together with prejudgment interest;

16      2.    For special damages according to proof;

17      3.    For compensatory damages according to proof, including past and future lost earnings and

18 other employment benefits, costs of seeking other employment, and damages for emotional distress,

19 humiliation, and mental anguish;

20      4.    For reasonable attorneys' fees and costs pursuant to Government Code section 12965(b),

21 Labor Code section 1102.5, and any other applicable statute;

22      5.    For prejudgment interest pursuant to Civil Code section 3287;

23      6.    For restitution of all monies due to Plaintiff from the unlawful business practices of

24 Defendants pursuant to Business and Professions Code sections 17200, et seq.;

25      7.    For punitive and exemplary damages pursuant to Civil Code section 3294 in an amount

26 appropriate to punish Defendants and deter others from engaging in similar conduct;

27      8.    For injunctive relief ordering Defendants to cease and desist from engaging in the unlawful

28 practices described herein;

9.      For costs of suit incurred herein; and

10.     For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action and claims to which she has a right to jury trial.

DATED: September 9, 2025                        **LAUREL EMPLOYMENT LAW**


_____

Joshua I. White, Esq.
Ashley Silva-Guzman, Esq.
Attorneys for Plaintiff, Yanne Xavier

COMPLAINT

EXHIBIT 1

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

September 9, 2025

ASHLEY SILVA-GUZMAN

,

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202509-31129409
        Right to Sue: XAVIER / FOX BROADCASTING COMPANY, LLC

Dear ASHLEY SILVA-GUZMAN:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

September 9, 2025

RE:   **Notice of Filing of Discrimination Complaint**
      CRD Matter Number: 202509-31129409
      Right to Sue: XAVIER / FOX BROADCASTING COMPANY, LLC

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

September 9, 2025

YANNE XAVIER

,

RE:    **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202509-31129409
Right to Sue: XAVIER / FOX BROADCASTING COMPANY, LLC

Dear YANNE XAVIER:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective September 9, 2025 because an
immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation
Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave
(Government Code sections 12945.2, 12945.6, or 12945.7) has the right to
participate in CRD's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in CRD's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
CRD's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
YANNE XAVIER                                    CRD No. 202509-31129409

                            Complainant,

vs.

    FOX BROADCASTING COMPANY, LLC
    ,

                            Respondents

---

**1.** Respondent **FOX BROADCASTING COMPANY, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **YANNE XAVIER**, resides in the City of **,** State of **.**

**3**. Complainant alleges that on or about **June 26, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's national origin (includes language restrictions).

**Complainant was discriminated against** because of complainant's national origin (includes language restrictions) and as a result of the discrimination was forced to quit, reprimanded, denied any employment benefit or privilege, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was forced to quit, reprimanded, denied any employment benefit or privilege, other, denied work opportunities or assignments.

-1-
*Complaint – CRD No. 202509-31129409*

Date Filed: September 9, 2025

CRD-ENF 80 RS (Revised 2025/02)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Additional Complaint Details:** Beginning in August 2023 through October 2023, Plaintiff established herself as a qualified employee, but by late 2024, Defendants initiated a systematic pattern of violations that escalated through her constructive discharge in June 2025. The violations commenced with whistleblower retaliation under Labor Code § 1102.5 when Plaintiff reported budget irregularities in December 2024, immediately triggering adverse employment actions including removal from major projects and events. Concurrently, Defendants engaged in national origin discrimination under Government Code § 12940(a) through supervisor Abumuhor's discriminatory comments that Plaintiff "only learned how to speak English" after starting at Fox, creating a hostile work environment based on her Brazilian heritage and accent in violation of Government Code § 12940(j). Despite Plaintiff's formal complaints to HR VP Melinda Joe in January 2025 regarding the discriminatory treatment and hostile conditions, Defendants escalated their retaliatory conduct under Government Code § 12940(h) through increased micromanagement, systematic isolation from meetings, mandatory email monitoring, and ultimately issuing a pretextual written warning on May 5, 2025, demonstrating their conscious disregard for her protected activities. Throughout this timeline, Defendants fundamentally failed to prevent discrimination, harassment, and retaliation as required under Government Code § 12940(k), allowing the hostile work environment to persist and intensify despite actual knowledge through documented HR complaints, ultimately resulting in Plaintiff's hospitalization for anxiety attacks on May 19, 2025, and her constructive discharge on June 26, 2025, when working conditions became so intolerable that no reasonable employee could continue.

Date Filed: September 9, 2025

VERIFICATION

I, **Ashley Silva-Guzman**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On September 9, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, CA.**

-3-
*Complaint – CRD No. 202509-31129409*

Date Filed: September 9, 2025

CRD-ENF 80 RS (Revised 2025/02)